Good morning, your honors. Suzanne Luban for Petitioner Shaw. I'd like to reserve three minutes for rebuttal, please. You may do so. This court, en banc, in Thompson v. Calderon, has already resolved the issue of whether there is clearly established Supreme Court law that controls what the prosecutors did in this case, arguing factually irreconcilable theories based of the same act to convict two different defendants of an act that could have only been done by one person. Now, what about Standefer? Standefer v. The United States, a Supreme Court case, 1980? Standefer involved prosecutors arguing the same theory in both cases, unsuccessfully in one case and successfully in the other case. That's the case involving Gulf Oil executive and the C.P.A. who, or actually the I.R.S. agent who he was charged with bribing. The I.R.S. agent was not convicted, and under an aiding and abetting theory, they prosecuted the official from Gulf Oil and successfully obtained a conviction for aiding and abetting. The issue there was whether the failure to secure the verdict was inconsistent with the aiding and abetting law. And the defendants there argued a civil estoppel theory, which is, A, not our theory here, and, B, this is not an aiding and abetting issue. In particular, that's why I'm only arguing the enhancement, which only added 16 months to my client's sentence, because the other charges, assault with a firearm, could be vicarious liability. But that particular charge under California law, there's no vicarious liability. It must be personal use by that person in connection with a specific crime charged against that person. So in this case, it was the charge of assault with a firearm against a specific individual, Cheryl Bishop, the manager of the restaurant. And the specific incident described to be that assault with a firearm that this personal use would have had to have been was this incident at the state. Right. But, of course, we're not here on a direct criminal appeal. We are here on a habeas, so we have to look more deferentially to the state court final decision. And I guess the question you need to tell us, or at least the issue you need to develop, is why the California's interpretation, given that there's standoffer, although there's, as you point out, contrary authority, why that isn't reasonable so far as clearly established Federal law is concerned? Actually, Your Honor, the court who mentioned standoffer is the district court in this case. And you have a de novo review. There is no state court decision that's a reasoned decision. So under Delgado, this court must undertake an independent factual evaluation to determine whether the state court decision that we know occurred, but we don't know what they were thinking, was unreasonable. Do we have anything in the record that shows whether or not the state court reached the merits? Well, yes, of course. The Supreme Court issued – this was only raised on habeas. It was never raised in direct appeal because the defendant didn't know what had happened. The trial of the second defendant occurred three years later. My client was in prison during that time. So when he found out about it, his habeas case was still pending. He was able to add it to his petition, and the district court ruled on it. But in the meantime, the case was stayed, and he raised those matters and exhausted them before the California Supreme Court, which issued postcard denials, one-word denial orders. Whatever that means, if they reached the merits, then we have to give them deference. If they didn't reach the merits, we don't give them deference. They reached the merits. So what's your position? Did they reach the merits? They reached the merits. So you defer on that issue, and we have to give them deference, correct? That's correct. And you have to imagine what they ruled or what their position is. I have some question on it, but I'll have to accept your capitulation on that point. The only state court decision that gives us any detail about this is actually the decision in the Mango-Watts case, where the court there discusses the issue of Thompson and whether the prosecutors did something that was in violation of due process, but holds it in that case because the facts actually supported finding the enhancement for Mr. Watts, that there was no violation there, but speculates that certainly there's a violation in this case, in Mr. Shaw's case. So what the prosecutors did is the same prosecutor's office, and they are held to be essentially the same person or the same entity under Kyle's, argued two completely irreconcilable theories as to who was the one person who walked that woman to the safe and said those things to her, I'm going to count to five. Only one person could have done that. That was outside of the vision of anybody in the restaurant. There's actually no witness who testifies who that was. So there are inferences that can be drawn from the varying witnesses' accounts. The witnesses' testimony did not vary significantly between the two trials, not enough to change the prosecutor's theories, and it varied in ways that the prosecutor even did not accept, like the hostess testified to something different than she testified to in the first trial, but neither party argued what she said. What the prosecutors argued was basically that this person who no one could identify was in one case Mr. Shaw, and it's directly, even in opening statement, before the witnesses testified. I think the record's pretty clear on the prosecution's change of their position on the facts before it. What I'd like to ask you is in Nguyen v. Lindsay, it indicates that if the prosecutor knowingly uses false evidence or operates in bad faith, the problem arises. Now, there's no question here about any false evidence. You're just saying that the prosecutor took the same evidence and did a different factual development to, in effect, convict two people of exactly the same crime. So my question to you is, under Nguyen case, what is bad faith? What does that mean? And how do we define it? Do cases help us in defining it? Well, Your Honor, I would submit that bad faith does not mean bad faith like ill motive, as in cases like a Brady violation, the prosecutor doesn't have to intend to hide the evidence. It's enough if they actually do not disclose it and the evidence is known and it exists. So I would say that using that word bad faith is actually more loaded than this standard calls for. But rather in the case of which one? Judge Clark's in the Eleventh Circuit, his concurrence in Drake v. Kemp, that case involved the same evidence and the prosecutors just argued it in a different way. So they argued they urged the jury to accept a different inference. In this case, in Mr. Shaw's case, the prosecutor urged the jury to accept an inference that was not supported by the evidence at all. Do you take the position that Judge Clark's concurrence is not a law of the Ninth Circuit? No, it's not the law of the Ninth Circuit, but certainly Thompson is the law of the Ninth Circuit on this, even though it was overruled on the procedural grounds in reverse. It has been cited and relied upon by many courts, including this circuit, but certainly I've found even recent district court cases continuing to rely on it as the law, that it is a violation of due process for prosecutors to assert irreconcilable theories, to convict two different defendants of the same act. I'm having difficulty with the bad faith issue. Obviously, our past cases demonstrate that our due process is the fairness of trial. I suppose you could say both of these trials were fair, but what you're saying is, in addition to that, the fairness of the trial isn't sufficient where the prosecution operates in bad faith, whatever that is, to take the same facts to convict two different people. That's correct. And what's your best case, aside from the concurrence of Justice Judge Clark, whom I respect and admire, but what's your best case, Supreme Court or Ninth Circuit, that the so-called bad faith is when the prosecution takes factually the same and convicts two people of the same crime, same prosecutor, for purposes of my question? Well, Thompson. Thompson. In Thompson, they use essentially the same evidence and argue that either in the first case that one person was there alone and in the second case that two people were there. And that factual pattern matches this case in the sense that the complaining defendant was tried first in both cases. Counsel, you're down to about a minute if you want to reserve your time. Thank you. Thank you. Mr. Grove. Good morning. May it please the Court. The first thing I'd like to do. Would you identify yourself for the record? Oh, I'm sorry, Your Honor. I'm Christopher Grove, the Respondent with the Attorney General's Office. Very good. You have a nice, low voice, but it'll be better if you raise it. Okay. I'm sorry, Your Honor. I will speak louder. The first question I would like to address is Counsel's comment in passing that Shaw was actually innocent of the gun use in the first case. I never, I have not understood that to be the issue, and I think that there's very strong evidence that, in fact, Shaw did use the gun against Ms. Bishop. I don't think that there's any question there. I just wanted to clarify that. The other comment I wanted to make is apparently Counsel is, her position is, is if the second trial didn't occur at all, then there would be no due process violation or no issue. It's just that because Shaw was convicted under substantial evidence of using this gun against Ms. Bishop, that subsequently, three years later, the prosecution secures a conviction or a finding that a different person used the gun against Ms. Bishop, that that then retroactively violated his ---- So you make the argument that our cases are right, and you have to say the same prosecutor did them both for the purpose of my question. Which of these people got their due process rights violated, Shaw or Watts? Well, neither, Your Honor. Neither. They can both go to jail for the same, exactly the same crime. The prosecutor can argue it differently and put the same person in jail on count six and seven. Well, Your Honor, actually, they're enhancements. But under circumstances, as is in this case, Exactly. There is evidence to show that both Shaw and Watts used a gun against Ms. Bishop. But we both know, the world knows, there's only one person that did it. And it's got to be either Watts or Shaw, but it can't be both. So the government takes the position that that's okay, there's no violation, even though count six and seven obviously can only be against the very same person. The government takes that position that's okay under due process. Well, first of all, Your Honor, there are multiple incidents of gun use against Ms. Bishop. So the question is really one of the defense, the prosecution's theory. And our position is, in fact, that the prosecution taking a different theory in a subsequent trial does not violate due process. Is that right? Factual, different factual decision with the very same facts. You can put a different spin on it, convict two people for exactly the same crime, when everyone knows that they both couldn't be convicted of that crime. Your Honor, you are the one that's saying everyone knows. I don't agree with that. Restricted to count six and seven, and tell me how you can say that two people could be convicted of that crime. Well, the testimony of the witnesses was not exactly clear, Your Honor, but there was evidence that Shaw was the one that approached Ms. Bishop and demanded that she get up and put the gun to her. There is testimony in the second trial, and I believe it was somewhat stronger, that Watts was the man seen running from the back of the kitchen area where the safe was, not Shaw. So it was, in fact, an open question. But, Your Honor, this Court doesn't have to go that far because to reverse in this case, to grant the writ in this case, there has to be controlling U.S. Supreme Court authority that holds that a prosecutor taking an inconsistent position in a subsequent trial, in argument, violates due process and violates due process of the individual who is first convicted. And there is no such authority. In fact, even in Thompson, as Judge Kaczynski pointed out, the plurality opinion does not, insofar as it's a plurality, I can't believe I can't say that. My mouth is a little dry. I'm tongue-twisted, Your Honor. Insofar as it did not command a majority, Your Honor, that it was not binding. Why isn't Judge Clark's position the obvious one for a government prosecutor, a United States government that has the responsibility of fairness and justice? Why isn't Judge Clark's position right, that there's something wrong here, that in America this should not happen? We'll set them both aside and go back and try it over and find out which one is guilty of that particular crime. Why doesn't that make sense? And I assume this applies to states as well, not just federal. Yeah. Your Honor, we're talking about an academic discussion as opposed to what is fair and what is not fair. But the issue here is what is the controlling Supreme Court authority? And our Supreme Court and a number of the circuit courts have found that there is no due process violation in a prosecutor taking an inconsistent position in a subsequent trial. Whatever we think our general notions of fairness or what should be are not perhaps irrelevant, but they're not the issue, Your Honor. The issue is, specifically, is there a controlling Supreme Court authority that dictates the results that the appellant wants? Apparently, Judge Clark thought there was. Do you disagree with that? But Judge Clark's opinion was simply a concurring, especially a concurring opinion. Which we have in this circuit identified as good law. A plurality. I got the word out. A plurality, Your Honor, in fact, did so. But a number of the other judges in the en banc panel rejected that approach. Does that leave it open for us, then, to make that decision? We can adopt Judge Clark's position? Not in a habeas matter, Your Honor. Because in this case, the ADPA requires that you the only time you can reverse a State court opinion is if it's an unreasonable application of controlling U.S. Supreme Court authority. And under these circumstances, there being a split in this circuit and a split, at best, a split among the circuits as to whether this constitutes misconduct, there is no way that under the ADPA that this conviction can be reversed for that reason. Unless the Court has any questions, I'm willing to submit it. No questions. Thank you. Ms. Lebon, you have some reserved time. Thank you, Your Honor. First, on this issue of the controlling Supreme Court authority, the Court in Thompson found that there were bedrock principles to support its decision. Lassiter, Berger, Aggers, Giles v. Maryland, Bagley, Caldwell v. Mississippi, prohibiting the government from using unfair strategy to obtain a conviction, urging the jury to draw a false inference in argument is impermissible under the Due Process Clause. There's no need under the Terry Williams case for there to be a single case on point that we can address and say that's the Supreme Court authority. And certainly this Court in Van Tran v. Lindsay has accepted that and held that. And in Duhane v. Ducharme holds that this Court's authority can be looked upon to see whether there is controlling Supreme Court authority. Another point raised by my opponent and actually raised by Your Honors repeatedly, the issue of whether it has to be the same district attorney, the same prosecutor. That's not the case. If there was an exception for that for different attorneys in the same office, then the prosecution could just avoid being caught doing this gamesmanship by switching district attorneys. Thank you, Counsel. Your time has expired. Thank you. The case just argued will be submitted for decision.
judges: Wallace, Hall, O'Scannlain